IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00908-GPG

JAMES FAIRCLOTH,

Plaintiff,

v.

COLO. DEPT. OF CORRECTIONS - CDOC,
RICK RAEMISCH, Executive Director of CDOC,
MICHAEL MILLER, Warden of Crowley Corr. Fac.,
DAVE ZUPAN, Asst. Warden of Crowley Corr. Fac.,
DAMON HININGER, CEO of C.C.A.,
CORRECTIONS CORPORATION OF AMERICA,
IAN HOLCOMB, Crowley Mailroom Personnel Chief, and
LT. BAZONA, Mailroom Lt. @ CMC-FMCC,

Defendants.

---

**ORDER DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT**

---

Plaintiff, James Faircloth, is a prisoner in the custody of the Colorado Department of Corrections (CDOC) at the Crowley County Correctional Facility in Olney Springs, Colorado ("CCF"). He initiated this action by filing *pro se* a Prisoner Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Mr. Faircloth has been granted leave to proceed *in forma pauperis*.

The Court must construe the Complaint liberally because Mr. Faircloth is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons discussed below, Mr. Faircloth will be directed to file an amended prisoner complaint.

## I. The Complaint

Plaintiff states that the case "is a prison condition of confinement and stoppage of the U.S. mail(s) issue involving the named defendants and C.C.A. and CDOC as involved parties in the stoppage of the Plaintiff's legal mail without good cause other than the nefarious reasons disguised as policy to give themselves some type of plausible deniability to negate their conspiracy to violate my rights to access the courts meaningfully and adequately." (ECF No. 1, at 5). He alleges that Defendant Bazona "committed a PREA-sexual harassment of my person while doing a strip search on or about October 21, 2015" and that he submitted a PREA (Prison Rape Elimination Act) report. (*Id.,* at 6). Plaintiff further alleges that Defendant Bazona "implemented the $2.00 mail outgoing" postage restriction after Plaintiff filed a grievance against corrections officer Wagner who told Plaintiff he "was trying to get my case against Lt. Bazona dismissed by interfering with my ability to litigate in all my cases so I could no longer access the Courts effectively." (*Id.*). Plaintiff further alleges that Defendant Zupan told him that he placed the mail restriction on Plaintiff's outgoing mail on March 17, 2016 in "reprisal" for Plaintiff's PREA report against Defendant Bazona. (*Id.*). He contends that he has contacted Defendants Raemisch, Miller, Zupan, Hininger, Holcomb, Bazona, and CDOC to complain about the postage restriction and retaliation, but they have failed to respond. (*Id.,* at 6-7). In the Complaint, Mr. Faircloth asserts three claims for relief and requests declaratory, injunctive, and monetary relief.

**Claim One**: Plaintiff alleges that Defendants have conspired to deprive him of his constitutional right of access to the courts by stopping Plaintiff's outgoing legal mail from being "sent to lawyers, courts, public officials for remedy in his open civil and

criminal cases." (ECF No. 1, at 8). Plaintiff further alleges that "cases have been dismissed and others are in danger of dismissal because of Defendants acts in stopping and singling out my outgoing legal mail to be stopped." (*Id.*).

**Claim Two:** Plaintiff asserts that Defendants have violated his First Amendment rights because they have "caused a known retaliation and failed to stop each other and have complied with each other's efforts to enact a reprisal and use policy in A.R. 300-38, IV, B-8 a&b to implement their reprisal knowing it singled me out and reprised my access to Courts and hindered by ability to litigate against them and their colleagues." (ECF No. 1, at 9). He contends that Defendants have retaliated against him for the PREA report against Defendant Bazona and Civil Action No. 12-cv-03317-REB-KLM. (*Id.,* at 10). He further alleges that he has sent letters, notices, and complaints to Defendants Raemisch, Hininger, Miller, and Zupan. (*Id.*). He also asserts that he was placed in segregation on or about April 12, 2016 for filing a grievance about putting him in a "dangerous and infectious environment and not following protocol for prophylaxis of chickenpox." (*Id.,* at 7).

**Claim Three:** Plaintiff alleges that Defendants have violated his Fourteenth Amendment due process and equal protection rights by stopping his mail based on his indigent status. (ECF No. 1, at 11). He further asserts that non-indigent prisoners are treated differently. (*Id.*).

## II. Analysis

### A. Vague and conclusory allegations

The Complaint is deficient because Mr. Faircloth's claims are based on vague and conclusory allegations that his federal constitutional rights have been violated.

Conclusory allegations do not entitle a pro se pleader to a day in court regardless of how liberally the court construes such pleadings. *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd,* 961 F.2d 916 (10th Cir. 1992). Furthermore, the general rule that pro se pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Thus, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well pleaded factual contentions, not his conclusory allegations." *Hall*, 935 F.2d at 1110.

In order to state a cognizable claim in federal court Mr. Faircloth must identify the specific factual allegations that support each claim, against which Defendant or Defendants he is asserting each claim, and what each Defendant did that allegedly violated his rights. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (noting that, to state a claim in federal court, "a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated").

**A. Eleventh Amendment Immunity**

The Complaint also is deficient because the State of Colorado and its entities, including the Colorado Department of Corrections, are protected by Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988). "It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment

immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994), *overrruled on other grounds by Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998). The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and congressional enactment of § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-345 (1979). Claims asserted against the individual Defendants in their official capacities are construed as claims against the State of Colorado, *see Hafer v. Melo*, 502 U.S. 21, 25 (1991), and are also barred by the Eleventh Amendment. Accordingly, the Colorado Department of Corrections is not a proper party to this action and should not be named as a defendant in the amended complaint. Moreover, Mr. Faircloth may not sue the individual Defendants, in their official capacities, for monetary or retrospective equitable relief.

The Eleventh Amendment, however, does not bar a federal court action so long as the plaintiff seeks in substance only prospective relief and not retrospective relief for alleged violations of federal law, but a plaintiff must assert a claim for prospective relief against individual state officers. *Verizon Maryland v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007).

**B. Personal Participation**

Mr. Faircloth also fails to allege specific facts that demonstrate that each of the Defendants personally participated in the asserted constitutional violations. Personal

participation is an essential allegation in a § 1983 action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir.2009) (citations and quotations omitted); *Dodds v. Richardson*, 614 F.3d 1185, 1200-1201 (10th Cir. 2010). A supervisor can only be held liable for his own deliberate intentional acts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."). In order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

In the amended complaint, Mr. Faircloth must allege specific facts to show how each named Defendant was personally involved in a deprivation of his constitutional rights. Further, Plaintiff is reminded that a Defendant such as Rick Raemisch, the Director of the Colorado Department of Corrections, Damon Hininger, CEO of C.C.A., or

the Wardens of CCCF, may not be held liable on the basis that they did not respond to or denied Plaintiff's grievances. The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Whitington v. Ortiz*, No. 07-1425, 307 F. App'x 179, 193 (10th Cir. Jan. 13, 2009) (unpublished) (stating that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.") (internal quotation marks and citation omitted); *Davis v. Ark. Valley Corr. Facility*, No. 02-1486, 99 F. App'x 838, 843 (10th Cir. May 20, 2004) (unpublished) (sending "correspondence [to high-ranking prison official] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983").

**C. Denial of Access to the Courts**

Mr. Faircloth primarily asserts that he has been denied his constitutional right of access to the courts because he has been placed on a postage restriction of no more than $2.00 per month in outgoing legal mail postage pursuant to CDOC policy.

To state an arguable claim, Plaintiff must plead facts to show that he was impeded in his ability to file a civil rights action. *See Lewis v. Casey*, 518 U.S. 343, 354–55 (1996) (plaintiff must allege that the state's interference led to an "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing] his efforts to pursue a legal claim"); *see also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir.1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."). Because Plaintiff was successful in filing the instant civil rights action, it appears he would not be able to adequately assert a

viable claim for denial of access to the courts. To assert a plausible access to the courts claim in the amended complaint, Mr. Faircloth must allege facts, as opposed to conclusory assertions, that demonstrate he has suffered an injury in his ability to pursue a nonfrivolous legal claim.

**D. Retaliation**

Mr. Faircloth also makes conclusory assertions that Defendants have retaliated against him for filing grievances, pursuing claims in civil rights actions, and making a PREA report against Defendant Bazona.

Prison officials may not retaliate against an inmate for exercising his constitutional rights. *See Peterson v. Shanks* , 149 F.3d 1140, 1144 (10th Cir. 1998). To state a retaliation claim Mr. Faircloth must demonstrate: (1) he was engaged in constitutionally protected activity, (2) Defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendant's adverse action was substantially motivated as a response to Plaintiff's constitutionally protected activity. *See Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir.2007).

"Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Gee*, 627 F.3d at 1191 (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1991)). Mr. Faircloth does not allege specific facts in the Complaint to show that a particular defendant retaliated against him because of his exercise of constitutional rights, and that he suffered an injury that would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity.

**E. Due Process**

Mr. Faircloth claims that the outgoing mail restriction has violated his Fourteenth Amendment due process rights. To state an arguable due process claim, Mr. Faircloth must allege facts that demonstrate he intentionally was deprived of a constitutionally protected interest in life, liberty, or property. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). The existence of a constitutionally protected liberty interest depends upon the nature of the interest asserted. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). A prisoner is not entitled to any procedural protections in the absence of a grievous loss. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Generally, a liberty interest protected by due process may arise under the United States Constitution or state law. *See Sandin*, 515 U.S. at 483-84. State law may create a liberty interest if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Relevant factors to be considered in determining whether certain conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life include whether the conditions relate to and further a legitimate penological interest, whether the conditions are extreme, whether the conditions increase the duration of confinement, and whether the conditions are indeterminate. *See DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Mr. Faircloth will be directed to file an amended complaint in which he alleges specific facts to show that the conditions of his confinement impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Again, conclusory allegations that he was denied due process are insufficient.

**F. Equal Protection**

Finally, Mr. Faircloth asserts an equal protection violation based on the outgoing mail restrictions placed on him as a pro se indigent prisoner. In support of his equal protections claim, he relies on conclusory assertions of disparate treatment.

In order to state an arguable equal protection claim, Mr. Faircloth must allege specific facts to demonstrate he intentionally was treated differently than similarly situated inmates. *See Penrod*, 94 F.3d at 1406. "Equal protection of the laws doesn't guarantee equal results for all." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (internal quotation marks omitted). Instead, the Equal Protection Clause "seeks to ensure that any classifications the law makes are made without respect to persons, that like cases are treated alike, that those who appear similarly situated are not treated differently without, at the very least, a rational reason for the difference." *Id.* (internal quotation marks omitted). Mr. Faircloth's equal protection claim is based on conclusory assertions, rather than specific facts showing disparate treatment.

Accordingly, it is

ORDERED that Mr. Faircloth file, **within thirty (30) days from the date of this order**, an Amended Prisoner Complaint that complies with the directives in this Order. It is

FURTHER ORDERED that Mr. Faircloth shall obtain the court-approved Prisoner Complaint form (with the assistance of his case manager or the facility's legal assistant), along with the applicable instructions, at www.cod.uscourts.gov. It is

FURTHER ORDERED that, if Mr. Faircloth fails to file an amended complaint that complies with this order within the time allowed, some or all of the action may be

dismissed without further notice.

DATED April 27, 2016, at Denver, Colorado.

BY THE COURT:

Gordon P. Gallagher
United States Magistrate Judge